IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER WYMA, #Y-20504, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18–cv–092–DRH ) ) |
| STATE OF ILLINOIS, and IDOC, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Christopher Wyma, an inmate in Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also*

2

*Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

### The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations spanning two different prisons. The Court will organize his allegations by prison.

**A. Stateville NRC**

On March 24, 2017, Plaintiff "was placed on an emergency shipment to Stateville NRC (IDOC) after receiving a sentence of 2 natural life sentences." (Doc. 1, p. 4). Plaintiff did not have paperwork, medical records, or his property when he was sent to Stateville. *Id.* Because of this, Stateville was unprepared to process him. *Id.* "Even after learning [Plaintiff] had none of [his] records, they failed to have them faxed. [Plaintiff] was not seen by doctors, or screened for anything." *Id.* Plaintiff told staff that he took several medications for medical and psychological problems, but one guard told Plaintiff to stop trying to tell them, threatening that if he did not stop he would "need meds for real." *Id.*

Plaintiff was told he would do intake on another day. *Id.* On March 27, 2017, Plaintiff was told he needed to complete intake. *Id.* He "did everything except medical and psych. This caused [Plaintiff] to be delayed even longer in receiving [his] medication. [He] was also never given a TB test." (Doc. 1, p. 5). Plaintiff wrote multiple health slips, talked to nurses, and told corrections officers

3

that he needed his medication.  *Id.*  He was completely ignored or told that there was nothing they could do.  *Id.*  He was eventually seen by medical on April 10, 2017, 16 days after he was processed.  *Id.*

Venlafaxine, which is one of the medications Plaintiff takes for severe depression, causes withdrawal symptoms if it is not taken daily.  (Doc. 1, p. 6).  Plaintiff "experienced dizziness, loss of appetite, stomach aches/pain, weakness, throwing up, and bowel incontinence."  *Id.*  Even after explaining that he was going through withdrawals, Plaintiff was ignored.  *Id.*  When he saw the doctor on April 10, he received a tuberculosis test and was prescribed Dicyclomine, which he takes for severe stomach pains, and Famotidine for his acid reflux.  *Id.*  After seeing the doctor, Plaintiff "still did not see psych, or receive any of [his] psychotropic medications."  *Id.*

The doctor claimed they did not have Plaintiff's records, and when they called Cook County Jail to get his records, they claimed they had never heard of Plaintiff.  (Doc. 1, p. 7).  The doctor told Plaintiff that he could not prescribe Plaintiff medication for his psychological issues without his records.  *Id.*

### B. Menard Correctional Center

On or around April 19, Plaintiff was sent to Menard.  *Id.*  During intake, Plaintiff explained his problems, as well as the fact that he was not receiving his psych medication, and they told him he would be seen by a medical provider.  *Id.*  "None of that happened which further delayed [Plaintiff] getting [his] psych meds."  *Id.*  Plaintiff wrote grievances at both Stateville and Menard, but they

"mysteriously vanished." *Id.* Plaintiff had his Dicyclomine and Famotidine in Menard, but they expired May 10, 2017, and "it took several months without seeing a doctor and grievances before [Plaintiff] could get them re-prescribed." *Id.* Plaintiff was not prescribed his psychotropic medication until June 18, 2017. *Id.* From May 10 to August 14, Plaintiff "received virtually none of [his] mediation." *Id.* The psych counselor explained that no one had bothered to retrieve any of Plaintiff's psych or medical records. (Doc. 1, pp. 7-8).

Plaintiff saw sick call several times and had to pay $5 every time because they would not let Plaintiff see a doctor who could re-prescribe Plaintiff's medications. (Doc. 1, p. 8). Because it took so long to retrieve his psychotropic medications, Plaintiff experienced severe depression as well as panic attacks. *Id.* When the Famotidine and Dicyclomine were not re-prescribed, Plaintiff experienced severe stomach pains, which affected his everyday activities and caused him to constantly throw-up from acid reflux. *Id.* Plaintiff filed an emergency grievance because he was in a lot of pain and needed his medications. *Id.* "[T]hey denied it as an emergency and said to refile." (Doc. 1, p. 9).

This situation caused Plaintiff severe pain, withdrawals, stress, depression, anxiety, and hopelessness. *Id.* "The problems could have been easily avoided if staff would have done their jobs properly and cared just enough to get [Plaintiff] to a doctor timely." (Doc. 1, p. 10). Plaintiff is "suing the state of Illinois under respondeat superior until those names can be amended into this suit." *Id.* Plaintiff seeks monetary damages, as well as "new policies put into place to ensure

this doesn't happen to anyone else." *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 2 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court, or another court that may hear any claims severed from this action. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** While Plaintiff was incarcerated at Stateville from March 24, 2017 to April 19, 2017, Defendants showed deliberate indifference to Plaintiff's serious medical needs by delaying and/or failing to provide him with needed medications and tests in violation of the Eighth Amendment.
>
> **Count 2 –** While Plaintiff was incarcerated at Menard from April 19, 2017 to August 14, 2017, Defendants showed deliberate indifference to Plaintiff's serious medical needs by delaying and/or failing to provide him with needed medications in violation of the Eighth Amendment.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

Both Counts 1 and 2 are brought against Illinois and the Illinois Department of Corrections. Count 2 shall remain in the instant action, and the merits of this claim shall be reviewed in this order. As shall be explained below, this claim shall be dismissed at this time pursuant to § 1915A, so no claims will remain in this action against Illinois or the Illinois Department of Corrections. As

a result, the remaining claims in Plaintiff's Complaint represent two sets of unrelated claims against different defendants: those based in Stateville in Count 1 and Menard in Count 2. Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 1 into a separate action, and shall open a new case with a newly-assigned case number for that claim. A separate merits review shall be conducted in the severed case after it is opened and assigned to a judge. Plaintiff shall be assessed a new filing fee for the severed case.

### **Count 2 - Menard**

The Court will begin its discussion of this claim with a word about the parties. Plaintiff has only named the State of Illinois and the Illinois Department of Corrections ("IDOC") as defendants in this suit. He has failed to name any individuals who may have subjected him to the constitutional deprivations alleged herein. Plaintiff claims that he has named Illinois based on a theory of *respondeat superior*, as a placeholder of sorts until the names of those responsible for his issues can be included. However, the doctrine of *respondeat superior* is not applicable to § 1983 actions, so Illinois and the Illinois Department of Corrections are not proper defendants in this action based on that theory. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

Further, the State of Illinois, as well as IDOC as a state agency, are not "persons" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71

7

(1989)); *see also* 42 U.S .C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

Finally, though Plaintiff could ultimately be awarded some injunctive relief in this action if he were to bring a viable claim against appropriate defendants requesting such relief in an amended complaint, the appropriate defendant for a request for injunctive relief would likely be the warden at Menard, not the State of Illinois or IDOC. Typically, in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief would be named as a defendant in his or her official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In the context of prison litigation, the official is usually the warden of the institution where the inmate is incarcerated. *See id.*

For the foregoing reasons, the State of Illinois and IDOC will be dismissed from *this* action with prejudice as immune from suit. Count 2 will also be dismissed, albeit without prejudice, for failure to state a claim upon which relief may be granted.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 2). There is no

constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist litigants who are unable to afford counsel. *Id.*

When a *pro se* litigant submits a request for counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case–factually and legally–exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

It is unclear what efforts Plaintiff has made to recruit counsel. He generally, and rather vaguely, alleges that he contacted attorneys he has had in previous suits to take his case, and none seemed interested. Plaintiff did not provide any further details regarding his efforts to secure counsel on his own (e.g., the names of attorneys, dates of his requests, or copies of communications from them). Therefore, the Court cannot adequately assess his efforts.

9

Further, the Court finds that it would be inappropriate to recruit counsel at this time. Despite his partial high school education, the Court finds that Plaintiff has demonstrated his ability to litigate his claims in federal court and prepare an amended complaint without counsel. The legal principles at issue are of the sort regularly litigated by inmates *pro se*. Further, his Complaint, despite its failure to name a proper defendant, is generally well written. Plaintiff simply needs to name eligible defendants at Menard and clearly identify what claims he is asserting against each defendant and why. At this early stage, the Court finds that Plaintiff can do this on his own. Therefore, the motion for recruitment of counsel (Doc. 2) is **DENIED** without prejudice to Plaintiff renewing this request, should it become necessary to do so in the future.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1,** which is unrelated to the other claim in this action, is **SEVERED** into a new case against the **ILLINOIS DEPARTMENT OF CORRECTIONS** and the **STATE OF ILLINOIS**.

The claims in the newly severed case shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order; and
- The Complaint (Doc. 1).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly

severed case.[1] No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is Count 2*.

**IT IS FURTHER ORDERED** that **COUNT 2** and the Complaint (Doc. 1) are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the **ILLINOIS DEPARTMENT OF CORRECTIONS** and the **STATE OF ILLINOIS** are **DISMISSED** from **this** action with prejudice for the reasons stated above.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file a First Amended Complaint, stating any facts which may exist to support a cognizable § 1983 claim, within 28 days of the entry of this Order (on or before February 26, 2018). Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

meaning of 28 U.S.C. § 1915(g) because the dismissal herein is for failure to state a claim upon which relief may be granted.

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.* 18-cv-92-DRH). The pleading shall present each claim in a separate count, and each count shall specify, *by name*, the defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his new complaint. Claims found to be unrelated to the alleged deliberate indifference to his medical needs at Menard will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

No service shall be ordered on any defendant until after the Court completes its § 1915A review of the First Amended Complaint.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

Judge Herndon
2018.01.22
12:13:38 -06'00'

**United States District Judge**