IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER WYMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   18-cv-92-RJD |
| ) | |
| MOHAMMED SIDDIQUI and WEXFORD ) | |
| HEALTH SOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Christopher Wyma, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center. In his Third Amended Complaint, Plaintiff claims he was not provided with certain medications to treat his psychiatric condition as well as irritable bowel syndrome and acid reflux. Plaintiff is proceeding in this action on the following claim against Defendants Dr. Siddiqui and Wexford Health Sources, Inc. ("Wexford"):

> Count One:   While Plaintiff was incarcerated at Menard in 2017, Defendants showed deliberate indifference to Plaintiff's serious medical needs by delaying and/or failing to provide him with needed medications and treatment in violation of the Eighth Amendment.

Defendants filed a motion for summary judgment on March 11, 2020 (Doc. 68). Along with their motion, Defendants filed a Rule 56 Notice informing Plaintiff of his obligation to file a response to their motion and advising him of the perils of failing to respond (*see* Doc. 70). Plaintiff's response to the motion was due by April 13, 2020. No response, or any other filing,

was received by Plaintiff.

On October 30, 2020, the Court granted Defendants' motion for summary judgment and entered judgment in favor of Defendants.  On November 13, 2020, Plaintiff filed a Motion for Extension of Time and Rehearing on Final Judgment (Doc. 73).  In his motion, Plaintiff asserted he never received a copy of Defendants' motion for summary judgment or an electronic filing notice from the Court.  Plaintiff asked that the Court send him a copy of Defendants' motion and allow him time to respond.  The Court granted Plaintiff's motion and vacated judgment and the order on summary judgment on April 21, 2021 (Doc. 75).  In the Court's order vacating judgment, Plaintiff was directed to file his response to Defendants' motion for summary judgment by May 21, 2021.  As of the date of this Order, Plaintiff has not filed any response.

Based on the foregoing, the Court again **GRANTS** Defendants' motion for summary judgment (Doc. 68).  The Court's reasoning set forth below is identical to the Order entered on October 30, 2020 (Doc. 71) as Plaintiff has not provided any additional evidence or argument for consideration.

### Background

According to his unverified complaint, Plaintiff arrived at Menard on April 19, 2017 and, during intake, Plaintiff told "several nurses" that he was not receiving his psych medication (*see* Doc. 15 at 7)[1].  The nurses did not refer Plaintiff to see "psych" or medical (*Id.*).  Plaintiff asserts Dr. Siddiqui is the Medical Director and should have had personal knowledge that Plaintiff was not being treated "after [he] saw sick call several times for the same reasons" (*Id.*).  Plaintiff received two medications, Dicyclomine and Famotidine, for IBS and acid reflux while at Menard,

---

[1] Because Plaintiff's complaint is not verified, it is not evidence that the Court considers in determining whether Defendants are entitled to summary judgment.  The Court, however, has included the allegations set forth in the complaint to provide context to Plaintiff's claims given Plaintiff's failure to respond to Defendants' motion for summary judgment.

but they expired around May 10, 2017 (Doc. 1 at 8). Plaintiff alleges that instead of having these medications renewed or being seen by a doctor, he was taken off of them (*Id.*). Plaintiff further alleges that medical staff knew the medications were set to expire, but they delayed in having him see a doctor for several months (*Id.*). Plaintiff claims Dr. Siddiqui refused to see him in a timely manner to prescribe his medications (*Id.*). Because of the delays in being seen by a doctor, Plaintiff experienced severe stomach pain and was unable to keep food down (*Id.*). Plaintiff asserts he received his psych medication on June 18, 2017. It is not clear from the complaint when or if Plaintiff's Dicyclomine and Famotidine were renewed.

Upon his transfer to Menard on April 19, 2017, Plaintiff's "Offender Health Status Transfer Summary" documented that Plaintiff suffered from acid reflux, hypertension, and IBS (Affidavit of Mohammed Siddiqui, MD, Doc. 69-1 at ¶ 7; *see* Doc. 69-2 at 1). Plaintiff had prescriptions for Pepcid, used to treat an excess of acid in the stomach, and Bentyl, used to relieve cramps or spasms of the stomach, intestines, and bladder (*Id.*). There were no prescriptions noted for any psychotropic medications (*Id.*). Plaintiff's "Medication Administration Record" indicated Plaintiff had a one-month prescription for the Pepcid and Bentyl, set to expire on May 11, 2017 (Doc. 69-1 at ¶ 8).

On May 10, 2017, Plaintiff was seen in nurse sick call for indigestion/heart burn (Doc. 69-1 at ¶ 14; *see* Doc. 69-2 at 4). The nurse provided Plaintiff with antacid tablets for 3 days and/or Pepcid for 3 days and advised him to return to sick call if his symptoms worsened or did not improve within one week (Doc. 69-1 at 14; *see* Doc. 69-2 at 4).

Plaintiff was seen for a mental health evaluation on May 24, 2017 (Doc. 69-1 at ¶ 15). Plaintiff reported that he was not receiving his psychotropic medications and the counselor told Plaintiff she would follow-up on his psychiatric referral (*Id.*). On June 15, 2017, Plaintiff had a

psychiatric diagnostic evaluation by a psychiatrist and was prescribed Buspar, Remeron, and Effexor (*Id.* at ¶ 16).

Later, on July 8, 2017, Plaintiff was seen in nurse sick call for indigestion and heart burn (Doc. 69-1 at ¶ 17; *see* Doc. 69-2 at 6). Plaintiff was assessed and referred to a doctor for renewal of Pepcid and Bentyl, and provided 12 tablets of Pepcid (*Id.*). On September 13, 2017, Plaintiff was seen by nurse practitioner Michael Moldenhauer (Doc. 69-1 at ¶ 19; *see* Doc. 69-2 at 8). Nurse practitioners such as Moldenhauer are licensed advanced practical nurses who are fully licensed to diagnosis conditions and prescribe medications (Doc. 69-1 at ¶ 18). Moldenhauer prescribed Bentyl and Pepcid for 6 months (Doc. 69-1 at ¶ 19; *see* Doc. 69-2 at 8).

Plaintiff was next seen on nurse sick call for complaints of nausea and vomiting on October 15, 2017 (Doc. 69-1 at ¶ 20; *see* Doc. 69-2 at 10). Plaintiff was assessed and referred to a doctor (*Id.*). Plaintiff saw NP Moldenhauer for a follow-up on October 23, 2017 (Doc. 69-1 at ¶ 21; *see* Doc. 69-2 at 12). Plaintiff again complained of nausea and vomiting and indicated he did not have enough time to eat due to his IBS (*Id.*). Moldenhauer considered it was possible Plaintiff had a Helicobacter pylori (H. pylori) infection (*Id.*). Moldenhauer issued Plaintiff a feed-in-cell permit for two months, and prescribed antibiotics, Amoxicillin and Biaxin, for 14 days (*Id.*). Plaintiff was to follow-up in two weeks (*Id.*).

Plaintiff saw Moldenhauer again on November 29, 2017 and assessed Plaintiff's condition as possible nervousness, anxiety, chronic gastritis, or diverticulitis (Doc. 69-1 at ¶ 22; *see* Doc. 69-2 at 14). Moldenhauer ordered a KUB (kidney, ureter, and bladder) x-ray, a CMP (comprehensive metabolic panel), a CBC (complete blood count), a urinalysis, and a fecal occult blood test, and referred Plaintiff to Defendant Dr. Siddiqui (Doc. 69-1 at ¶ 22; *see* Doc. 69-2 at 14).

Dr. Siddiqui saw Plaintiff on December 21, 2017 (Doc. 69-1 at ¶ 24; *see* Doc. 69-2 at 16).

Dr. Siddiqui discontinued Pepcid, and prescribed Prilosec and Reglan to address Plaintiff's stomach complaints (Doc. 69-1 at ¶ 24; *see* Doc. 69-2 at 16). Dr. Siddiqui also continued Plaintiff's feed-in permit for 12 months (*Id.*). Plaintiff was next seen by a nurse on January 25, 2018 for complaints of not being able to keep food down and losing weight (Doc. 69-1 at ¶ 27; *see* Doc. 69-2 at 17). Plaintiff was seen by a nurse practitioner on January 31, 2018 who ordered an x-ray of Plaintiff's neck and labs (Doc. 69-1 at ¶ 28; *see* Doc. 69-2 at 18).

On March 7, 2018, Plaintiff again saw Dr. Siddiqui for complaints of vomiting and losing weight (Doc. 69-1 at ¶ 29; *see* Doc. 69-2 at 21). All of Plaintiff's blood work was negative (*Id.*). Dr. Siddiqui advised Plaintiff to drink nutrition shakes and planned to refer Plaintiff to a gastroenterologist (*Id.*).

Plaintiff saw Dr. Mark Feldman, a gastroenterologist, on May 16, 2018, who diagnosed Plaintiff with achalasia, a disorder that makes it difficult for food and liquid to pass into the stomach, after Plaintiff had an EGD (esophagogastroduodenoscopy) on July 18, 2018 (Doc. 69-1 at 30). Dr. George Patterson, a thoracic surgeon, performed an esophagomytomy on Plaintiff to treat his achalasia in November 2018 (Doc. 69-1 at ¶ 32).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Plaintiff is proceeding in this action on an Eighth Amendment claim of deliberate indifference against Dr. Siddiqui and Wexford for delaying and/or failing to provide Plaintiff with needed medications and treatment.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious

medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted).

Defendants do not address whether Plaintiff's medical condition constitutes a serious medical need and, as such, the Court considers this issue conceded for purposes of this order.

**Dr. Siddiqui**

Dr. Siddiqui asserts his treatment of Plaintiff and issuance of prescription medication to treat his complaints was appropriate. The Court agrees.

Relevant to the third amended complaint, Plaintiff first saw Dr. Siddiqui on December 21, 2017. Prior to this time, Plaintiff had been prescribed Bentyl and Pepcid by NP Moldenhauer to address his complaints of indigestion and heartburn. Dr. Siddiqui discontinued these prescriptions and prescribed Prilosec and Reglan. Dr. Siddiqui next saw Plaintiff on March 7,

2018 (well after this lawsuit was filed), and he referred Plaintiff to a gastroenterologist for evaluation. Plaintiff was diagnosed with achalasia in May 2018, and underwent a procedure to treat this condition in November 2018.

Thus, even when viewing this evidence in Plaintiff's favor, the record reflects that Plaintiff regularly sought treatment and was examined by Defendant Dr. Siddiqui, as well as other medical providers at Menard. Plaintiff was provided various prescription medications to address his complaints of stomach pain and vomiting, and was evaluated by a psychiatrist and issued medication to address his psychiatric condition. Ultimately, Plaintiff was referred by Dr. Siddiqui to an outside specialist to address his physical complaints of vomiting and stomach pain. Plaintiff may not have agreed with Dr. Siddiqui's treatment regimen or decisions, but it is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

There is no evidence that Defendant's prescribed course of treatment was "blatantly inappropriate." Rather, the evidence demonstrates that Defendant Siddiqui examined Plaintiff,

prescribed medication to address his complaints, and referred Plaintiff for a variety of diagnostic tests in an attempt to treat the same. The record fails to demonstrate that Dr. Siddiqui delayed or failed to provide Plaintiff with needed medications and treatment. Accordingly, the Court finds that Defendant Dr. Siddiqui's treatment of Plaintiff was grounded in professional judgment and was reasonable. *See Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). For the above-mentioned reasons, Defendant Dr. Siddiqui is entitled to judgment as a matter of law.

**Wexford Health Sources, Inc.**

Plaintiff asserts that Defendant Wexford instituted or maintained unconstitutional policies or practices that delayed or caused medical staff to fail to provide him with needed medications and treatment.

Where a private corporation has contracted to provide essential government services, such as health care for prisoners, the private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Plaintiff to recover from Wexford, he must offer evidence that an injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Shields*, 746 F.3d at 796. Plaintiff must also show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). Finally, a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted).

In his third amended complaint, Plaintiff alleges that Wexford has a policy of not having their staff and doctors see patients in a timely manner. However, Plaintiff has not provided any evidence of such policy or practice. Plaintiff's allegation is also belied by the record. Plaintiff was seen by medical providers for his stomach complaints at least ten times from May 2017 to May 2018, and referred to an outside specialist who diagnosed and subsequently treated his condition. For these reasons, Wexford is entitled to summary judgment.

## Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 68) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants Dr. Mohammed Siddiqui and Wexford Health Sources, Inc. and against Plaintiff Christopher Wyma. **IT IS SO ORDERED.**

**DATED: June 1, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**